## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DEALOGY DEN LLC and PAUL SANDERS, <br><br> Defendants. | Case No. <br><br> **JURY TRIAL DEMANDED** <br><br> **PERMANENT INJUNCTIVE RELIEF REQUESTED** |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs Nutramax Laboratories, Inc. ("Nutramax Labs") and Nutramax Laboratories Veterinary Sciences, Inc. ("Nutramax Vet") (collectively, "Nutramax") file this Complaint against Dealogy Den LLC and Paul Sanders (collectively, "Defendants") and in support allege as follows:

## NATURE AND BASIS OF ACTION

1.     This action has been filed to stop unauthorized resellers from unlawfully interfering with Nutramax's contractual relationships with its authorized resellers, and from selling and distributing, under Nutramax's well-known trademarks, products that are materially different from Nutramax's authorized products without Nutramax's consent or supervision. Through their unauthorized

- 1 -

sales, Defendants have unlawfully misappropriated the goodwill associated with Nutramax's PROVIABLE and NUTRAMAX LABORATORIES trademarks (the "Nutramax Marks") without subjecting the Nutramax products they sell to the same rigorous storage and distribution, product knowledge, and customer support requirements that Nutramax requires of its authorized resellers.

2.      Defendants' actions constitute (1) trademark infringement in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)); (2) unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); and (3) tortious interference with a contract under South Carolina common law. In response to these actions, Nutramax is seeking injunctive relief, actual damages, disgorgement of profits, punitive damages, costs, and reasonable attorneys' fees.

## THE PARTIES

3.      Plaintiff Nutramax Labs is a corporation organized and existing under the laws of the State of South Carolina. Nutramax Labs maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720. Nutramax Labs is the owner of the Nutramax Marks which identify supplements for companion animals sold to consumers throughout the United States and abroad.

4.     Plaintiff Nutramax Vet is a corporation organized and existing under the laws of the state of South Carolina. Nutramax Vet maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720. Nutramax Vet is the licensee of the Nutramax Marks, which it uses to identify supplements for companion animals sold to consumers throughout the United States and abroad.

5.     Defendant Dealogy Den LLC ("Dealogy") is a Limited Liability Company incorporated under the laws of South Carolina. Dealogy's principal address listed with South Carolina's Office of the Secretary of State is 429 Mountain Laurel Circle, Goose Creek, South Carolina 29445. Dealogy is offering to sell and/or selling unauthorized and infringing Nutramax products to consumers throughout the United States through the e-commerce platform Amazon.com under the seller account name "Dealogy Den LLC" (the "Seller Account"). A true and correct copy of the Amazon Seller information page for the Seller Account is attached hereto as Exhibit A. This information page also lists the 429 Mountain Laurel Circle address as Dealogy's business address.

6.     Defendant Paul Sanders ("Sanders") is a South Carolina individual who, upon information and belief, personally authorized, directed, and/or participated in Dealogy's unlawful activities outlined in this complaint. His address

listed with South Carolina's Office of the Secretary of State is 429 Mountain Laurel Circle, Goose Creek, South Carolina 29445.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over Nutramax's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337, and 1338 because this action arises under the Lanham Act (15 U.S.C. §§ 1051 *et seq*).

8.     This Court has supplemental jurisdiction over Nutramax's South Carolina common law claim pursuant to 28 U.S.C. § 1367.

9.     Defendants are subject to this Court's personal jurisdiction because they have availed themselves of the benefits of doing business in Georgia by marketing and selling their products here.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants engage in tortious and unlawful conduct in this judicial district by advertising, offering to sell and/or selling unauthorized and infringing Nutramax products.

## FACTUAL BACKGROUND

## I.    NUTRAMAX AND ITS PRODUCTS

11.    Nutramax researches, develops, and sells high-quality, innovative health supplements. Nutramax's wide variety of animal health supplements are utilized for several purposes, including to support intestinal, joint, liver, and immune

health. Nutramax's health supplement products are highly regarded in the nutritional supplement industry because they are supported by scientific research and studies.

12.    Over the years, Nutramax has spent millions of dollars researching and developing innovative health supplement products. Every year, Nutramax devotes significant financial resources – in the form of marketing, advertising, and other initiatives – to building its brand as a provider of high-quality, safe, and effective animal health supplements.

13.    Nutramax sells its health supplement products through a diversified portfolio of well-recognized and widely trusted brands.

14.    Each Nutramax product bears the NUTRAMAX LABORATORIES mark in addition to a mark distinguishing the product's specific line. For example, Nutramax's Proviable® packaging bears both the NUTRAMAX LABORATORIES and PROVIABLE marks.

15.    Proviable® supplements are some of the most popular digestive health products in the companion animal market. Nutramax has generated significant sales of its Proviable® products nationwide, including in this judicial district.

16.    Since at least as early as 1991, Nutramax has continuously and exclusively used the NUTRAMAX LABORATORIES mark in interstate commerce to identify its products.

17.    Since at least as early as 2008, Nutramax has continuously and exclusively used the PROVIABLE mark in interstate commerce to identify digestive health supplements for animals.

18.    The Nutramax Marks appear prominently on all Proviable® products and in all advertising and marketing materials for those products.

19.    In recognition of Nutramax's exclusive right to use the Nutramax Marks in commerce in the United States, the U.S. Patent and Trademark Office has issued Nutramax registrations for those marks, namely, U.S. Reg. No. 2,231,260 (NUTRAMAX LABORATORIES), U.S. Reg. No. 4,077,241 (NUTRAMAX LABORATORIES (Stylized)), U.S. Reg. No. 4,654,181 (NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC. (Stylized)), and U.S. Reg. No. 3,481,550 (PROVIABLE). True and correct copies of these registrations are attached as Exhibit B.

20.    The registrations for the Nutramax Marks are *prima facie* evidence of their validity and constitute constructive notice of Nutramax's ownership of the Nutramax Marks in accordance with Sections 7(b) and 22 of the Lanham Act (15 U.S.C. §§ 1057(b) and 1072).

21.    The registrations for the Nutramax Marks are incontestable pursuant to Section 15 of the Lanham Act (15 U.S.C. § 1065) and – pursuant to Section 33(b) of

the Act (15 U.S.C. § 1115(b)) – constitute conclusive evidence of Nutramax's exclusive right to use the Nutramax Marks in commerce in the United States.

22.    By virtue of Nutramax's exclusive use of the Nutramax Marks in interstate commerce, Nutramax is the exclusive owner of all right, title, and interest in the Nutramax Marks and the corresponding registrations.

23.    Over the years, Nutramax has diligently protected the Nutramax Marks and their accompanying goodwill.

## II.    NUTRAMAX AND ITS AUTHORIZED RESELLERS

24.    Nutramax distributes its products through multiple trade channels, including (but not limited to) the veterinary channel, brick-and-mortar retail, hybrid retailers (with a mix of brick-and-mortar and ecommerce outlets) and "pure play ecommerce" (resellers that only have an online sales outlet).

25.    Nutramax typically enters into written agreements with each of its authorized resellers and distributors in each trade channel.

26.    All, or substantially all, of these agreements, across trade channels, include provisions restricting to whom each authorized party can sell Nutramax products (e.g., only to end users, only to particular resellers, only particular websites, etc.).

27.    In the pure play ecommerce channel, Nutramax's products are distributed through a network of authorized resellers, substantially all of whom enter

into agreements with Nutramax governing their sale of Nutramax's products (the "Authorized Reseller Agreements").

28.    All, or substantially all, of the Authorized Reseller Agreements include the following requirements to ensure a high level of product quality and customer service:

- The reseller is required to maintain qualified personnel with knowledge of the specifications, features, and uses of Nutramax products and provide quality post-sale support to consumers who purchase Nutramax products. This ensures that consumers receive the level of customer service and support they have come to expect when purchasing genuine Nutramax products.

- The reseller is required to store Nutramax products in a cool, dry area out of direct sunlight in a controlled room with a temperature between 40 and 70 degrees Fahrenheit. This is because the quality of Nutramax's products can be damaged when stored outside of these conditions.

29.    These provisions ensure that the quality of the products and the level of customer service and support remain at the high level consumers have come to expect when purchasing genuine Nutramax products.

30.    Nutramax products that are sold by resellers who are not authorized are materially different from the Nutramax products that travel through proper, authorized distribution channels.

31.   In particular, because unauthorized resellers are not contractually bound by an Authorized Reseller Agreement with Nutramax, such resellers are not contractually obligated to properly store Nutramax products at conditions that maintain the products' quality.

32.   Nutramax therefore cannot know or guarantee the quality of the products sold to end users by such unauthorized sellers; consumers, however, expect that when they purchase "new" Nutramax products online they are purchasing products that have been handled and stored as the manufacturer intended.

33.   Unauthorized resellers of Nutramax's products are also not contractually bound to employ someone with knowledge of the specifications, features, and uses of Nutramax's products, as is required under the Authorized Reseller Agreement.

34.   Consumers who purchase Nutramax products from such unauthorized resellers are therefore unable to access the pre- and post-sale product support to which consumers who purchase from Nutramax's authorized resellers have access.

## III.   DEFENDANTS' UNLAWFUL CONDUCT

35.   Defendants, who, upon information and belief, are "pure play" ecommerce sellers with no brick-and-mortar retail or other sales outlets, are engaging in the unauthorized sale of Nutramax's Proviable® Digestive Health

Supplements (30 count). A true and correct copy of Defendants' Amazon product listing for this Proviable® product is attached hereto as Exhibit C.

36.    Defendants are using the Nutramax Marks in conjunction with their unauthorized sales activity.

37.    Defendants' unauthorized goods have been sold and shipped to at least one purchaser in Georgia.

38.    Consumers, relying on Amazon's reputation – and the reputation of the Nutramax Marks – have no reason to suspect that the Nutramax products purchased from Defendants on Amazon.com are materially different from those purchased directly from Nutramax's authorized resellers.

39.    Consumers are therefore misled to believe that the Nutramax products sold by Defendants are the same as the goods Nutramax sells online through authorized resellers when, in fact, they are materially different.

40.    Upon information and belief, the Nutramax products sold by Defendants do not conform to the requirements of the Authorized Reseller Agreements. The Authorized Reseller Agreements are meant to ensure that end users receive the high-quality products and customer service that they have come to expect from Nutramax.

41.    In any event, by selling Nutramax products as "new" without being party to an Authorized Reseller Agreement, Defendants are selling to consumers

products that are materially different from Nutramax products sold by authorized resellers because, contrary to consumer expectation, Defendants are not obligated to store Nutramax products at proper temperatures and are not obligated to ensure the quality of pre- and post-sale support provided by authorized resellers.

42.   The unauthorized sale, using the Nutramax Marks, of products that are materially different from genuine Nutramax products harms the substantial goodwill that Nutramax has accrued in the Nutramax Marks.

43.   Nutramax is the sole distributor of Proviable® supplements and carefully selects its authorized online resellers and distributors.

44.   Upon information and belief, Defendants obtained the Nutramax products that they are selling from one or more of Nutramax's authorized resellers and/or distributors.

45.   As noted above, Nutramax's agreements with its resellers and distributors specify to whom those entities can sell Nutramax products. There is no reseller or distributor who Nutramax has explicitly authorized to sell Nutramax products to Defendants.

46.   By obtaining the Nutramax products in this manner, Defendants therefore cause one or more of Nutramax's authorized resellers or distributors to be in violation of their agreements with Nutramax.

47.    Nutramax previously notified Defendants that their unauthorized sale of Nutramax products directly interferes with Nutramax's business relationships with one or more of Nutramax's authorized resellers or distributors. Nutramax sent Defendants multiple communications—including on June l8, 2024, July 29, 2024, and July 31, 2024 (all via UPS next day air and the seller messaging platform on Amazon.com)—to this effect, with no response from Defendants.

48.    Despite this knowledge, Defendants continue to engage in the unauthorized sale of Nutramax products obtained, upon information and belief, from one or more of Nutramax's authorized resellers or distributors, therefore continuing to intentionally cause those resellers and/or distributors to be in breach of their agreements with Nutramax.

49.    Nutramax has no association or affiliation of any kind with Defendants or their online businesses, and Nutramax has never authorized Defendants to use the Nutramax Marks or sell Nutramax products.

## COUNT I
### Trademark Infringement
### (15 U.S.C. § 1114)

50.    Nutramax incorporates by reference the allegations set forth in paragraphs 1 through 49 of this Complaint as if fully repeated and restated here.

51.    The Nutramax Marks identify the goods that are offered and warranted by Nutramax and Nutramax alone. The marks serve as symbols of the substantial goodwill that Nutramax has accrued in its marks.

52.    Defendants are using the federally registered Nutramax Marks in interstate commerce without Nutramax's authorization or consent in a manner that is likely to cause confusion, mistake, or deception as to whether the goods originate from Nutramax, whether the goods are sponsored or endorsed by Nutramax, and/or whether the goods are associated or affiliated with Nutramax.

53.    Despite Defendants' knowledge of Nutramax's rights in the Nutramax Marks, Defendants continue to use those marks to pass off unauthorized goods as genuine goods sold by Nutramax or one of its authorized resellers.

54.    The goods sold by Defendants are not genuine Nutramax products because they are materially different from Nutramax's genuine products, in that they are not subject to Nutramax's storage condition requirements and are not subject to Nutramax's product support and knowledge requirements that are imposed on Nutramax's authorized "pure play" ecommerce resellers.

55.    Defendants' conduct constitutes knowing and willful trademark infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114).

56.    Defendants' conduct has enabled them to earn profits to which they are not in law, equity, or good conscience entitled, and has unjustly enriched Defendants, all to Defendantss profit and Nutramax's damage.

57.    Nutramax is entitled to injunctive relief under 15 U.S.C. § 1116 because there is no adequate remedy at law to account for Defendants' infringement. Defendants' infringement will continue to cause irreparable harm unless and until it is enjoined by this Court.

58.    As a result of the intentional, willful, and wanton actions of Defendants as set forth above, Nutramax is entitled to recover (1) Nutramax's actual damages (which, at the Court's discretion, may be increased to an amount three times the amount proven as actual damages); (2) a disgorgement of Defendants' profits; (3) the costs of the action; and – because this is an exceptional case – (4) reasonable attorneys' fees.

**COUNT II**
**False Designations of Origin & False Descriptions**
**(15 U.S.C. § 1125(a))**

59.    Nutramax incorporates by reference the allegations set forth in paragraphs 1 through 49 of this Complaint as if fully repeated and restated here.

60.    Defendants are knowingly selling unauthorized Nutramax products bearing the Nutramax Marks in interstate commerce in a manner likely to cause

consumer confusion, mistake, or deception as to the true source of the goods and as to whether Defendants are associated with or endorsed by Nutramax.

61.    The goods sold by Defendants are not genuine Nutramax products because they are materially different from Nutramax's genuine products, in that they are not subject to Nutramax's storage condition requirements and are not subject to Nutramax's product support and knowledge requirements imposed on Nutramax's authorized "pure play" ecommerce resellers.

62.    Defendants' conduct constitutes false designations of origin and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)).

63.    Defendants' conduct has enabled them to earn profits to which they are not in law, equity, or good conscience entitled, and has unjustly enriched Defendants, all to Defendants' profit and Nutramax's damage.

64.    Nutramax is entitled to injunctive relief under 15 U.S.C. § 1116 because there is no adequate remedy at law to account for Defendants' infringement. Defendants' infringement will continue to cause irreparable harm unless and until it is enjoined by this Court.

65.    As a result of the intentional, willful, and wanton actions of Defendants as set forth above, Nutramax is entitled to recover (1) Nutramax's actual damages (which, at the Court's discretion, may be increased to an amount three times the

amount proven as actual damages); (2) Defendants' profits; (3) the costs of the action; and – because this is an exceptional case – (4) reasonable attorneys' fees.

## COUNT III
### Tortious Interference with a Contract
### (South Carolina Common Law)

66.   Nutramax incorporates by reference the allegations set forth in paragraphs 1 through 49 of this Complaint as if fully repeated and restated here.

67.   Nutramax maintains close business relationships with its authorized resellers and distributors. These relationships are formalized in written agreements.

68.   Defendants were given notice of Nutramax's contractual relationships with its authorized resellers and distributors. Additionally, Defendants were given notice of the fact that their unauthorized sale of Nutramax goods interfered with Nutramax's contractual relationships with its authorized resellers and distributors. Yet Defendants continues to source and sell their unauthorized products.

69.   Upon information and belief, Defendants are intentionally inducing one or more of Nutramax's authorized resellers and/or distributors to breach their agreement with Nutramax by offering to buy and/or buying Nutramax products from one or more of them—none of whom are authorized to sell Nutramax products to Defendants for resale.

70.   Upon information and belief, Defendants' interference with Nutramax's agreements with its authorized resellers and/or distributors has caused

those parties to divert their authorized Nutramax products to unauthorized purchasers in breach of their agreements with Nutramax.

71.    Defendants' flagrant sale of unauthorized Nutramax products has harmed Nutramax and will continue to harm Nutramax unless this Court enjoins Defendants' unauthorized sales.

72.    Defendants' failure to be bound by Nutramax's authorized reseller requirements, including requirements regarding storage conditions and product knowledge and support, render the products sold by Defendants materially different from authorized Nutramax products that travel in the appropriate distribution chain that flows from Nutramax to authorized resellers and distributors to end users.

73.    Defendants' conduct constitutes intentional tortious interference with a contract for which Defendants are liable to Nutramax.

74.    Nutramax is entitled to injunctive relief because there is no adequate remedy at law to address Defendants' tortious conduct. Defendants' tortious activity will continue to cause irreparable harm unless and until it is enjoined by this Court.

75.    As a result of the intentional, willful, and wanton actions of Defendants as set forth above, Nutramax is entitled to recover (1) Nutramax's actual damages; and (2) punitive damages.

## JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Nutramax demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Nutramax prays for relief and judgment as follows:

1.     The Court enter judgment that the Nutramax Marks are valid and enforceable; that Nutramax owns those marks; that Defendants are infringing those marks; that Defendants are using false designations of origin and engaged in unfair competition in violation of 15 U.S.C. § 1125(a); and that Defendants are tortiously interfering with Nutramax's contracts with its authorized resellers and distributors in violation of South Carolina common law.

2.     Defendants, their affiliates, agents, servants, employees, attorneys, and representatives, and all persons acting for, with, by, through, under, or in active concert with them, be permanently enjoined and restrained from:

(a)     using the Nutramax Marks or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, or sale of any product that Nutramax has not authorized to be sold by Defendants in connection with the Nutramax Marks;

(b)     passing off, inducing, or enabling others to sell or pass off any product as a genuine PROVIABLE or NUTRAMAX LABORATORIES

product or any other product produced by Nutramax that is not Nutramax's product or not produced under the authorization, control, or supervision of Nutramax and approved by Nutramax for sale by Defendants;

(c)     shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Nutramax to be sold or offered for sale by Defendants; and

(d)     otherwise competing unfairly with Nutramax in any manner.

3.     The Court enter an Order that, upon Nutramax's request, Defendants, those in privity with Defendants, and those with notice of the injunction – including any online retailers, third-party sales platforms, social media platforms, internet search engines, and email service providers for Defendants – shall:

(a)     disable and cease providing services for any accounts through which Defendants engages in the unauthorized advertising, promotion, or sale of PROVIABLE or NUTRAMAX LABORATORIES products;

(b)     disable and cease displaying any advertisements used by or associated with Defendants in connection with the unauthorized advertising, promotion, or sale of PROVIABLE or NUTRAMAX LABORATORIES products; and

- 19 -

(c)     Deliver to Nutramax or destroy, at Nutramax's discretion, all Nutramax products or other products bearing the Nutramax Marks in Defendants' possession or held on behalf of Defendants.

4.     The Court enter an Order awarding Nutramax, on Counts I & II: (1) Nutramax's actual damages (which, at the Court's discretion, may be increased to an amount three times the amount proven as actual damages); (2) Defendants' profits; and (3) the costs of the action.

5.     The Count enter an Order awarding Nutramax, on Count III, its actual damages and punitive damages.

6.     This case be deemed an exceptional case and Nutramax be awarded its reasonable attorneys' fees incurred in connection with its Lanham Act claims pursuant to 15 U.S.C. § 1117.

7.     Nutramax be granted such other, different, and additional relief as the Court deems just and proper.

8.     Defendants, within fourteen (14) days after service of judgment upon them, be ordered to file with the Court and serve upon Nutramax a written report under oath setting forth in detail the manner and form in which Defendants have complied with the requirements of the judgment.

Respectfully submitted, this 27th day of August, 2024.

By:  **Uly S. Gunn**
_____
Jason D. Rosenberg
Georgia Bar No. 510855
Uly S. Gunn
Georgia Bar No. 261871
**Alston & Bird LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Fax: 404-881-7777
*jason.rosenberg@alston.com*
*sam.gunn@alston.com*

*Attorneys for Plaintiffs Nutramax*
*Laboratories, Inc. and Nutramax*
*Laboratories Veterinary Sciences, Inc.*